UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RONNELL PERKINS, CDCR #E-30776,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CLASSIFICATION SERVICE DEP'T; D. CURRY; A. MONARREZ; F.N. GUZMAN; RAYMOND MADDEN; T. RAYBON; DOES 1-10,<br>　　　　　　　　　　　　Defendants. | Case No.: 3:19-cv-01382-JLS-MDD<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § § 1915A(b)**<br><br>(ECF No. 2) |

Plaintiff Gary Ronnell Perkins, proceeding pro se, is currently incarcerated at Centinela State Prison located in Imperial, California, and has filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* Complaint ("Compl."), ECF No. 1. In addition, Plaintiff has filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a certified Prison Certificate and a copy of his CDCR Inmate Trust Account Statement Reports (ECF Nos. 2, 3). After reviewing Plaintiff's Motion and the claims presented in his Complaint, the Court rules as follows.

///

///

## I. IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his CDCR Inmate Statement Report showing his trust account activity at the time of filing, as well as

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

a Prison Certificate signed by a CEN Accounting Officer attesting as to his monthly balances and deposits. *See* ECF No. 3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff had average monthly deposits of $106.67 to his account and maintained an average balance of $174.23 over the six-month period preceding the filing of his current Complaint. At the time of filing, however, he had an available balance of only $3.70 to his credit. *See* ECF No. 3.

Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $34.85 pursuant to 28 U.S.C. § 1915(b)(1). Because Plaintiff's available balance may be insufficient to satisfy this initial fee, the Court will direct the Secretary of the CDCR, or his designee, to collect it only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II. Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

*A. Standard of Review*

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP including those, like Plaintiff, who are "incarcerated or detained in any facility," "as soon as practicable after docketing," and ideally before the service of process upon any Defendant. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune.

*See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915[] is to 'ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Plaintiff's Factual Allegations

In February of 2017, the CDCR implemented a policy that "authorized prisoners serving a sentence of 'life without the possibility of parole' to be housed at any Level III" facility that has a "lethal electrified fence." Compl. at 9. Plaintiff alleges "classification staff representative auditors" have been "approving endorsements of all other inmates similarly situated" to Plaintiff to "prisons closer to Los Angeles" than CEN. *Id.* at 10.

On November 27, 2017, Plaintiff "appeared before the unit classification committee" and "requested transfer and placement at a Level II facility closest to Los Angeles due to medical hardships of Plaintiff's mother and wife." *Id.* at 10. The classification committee, however, "elected" to recommend Plaintiff for transfer to the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California. *Id.* Alternatively, they also recommended that Plaintiff could transfer to Solano. *Id.*

On December 12, 2017, "Plaintiff's request for transfer to [RJD]" was denied by Defendant Curry and instead, Plaintiff was "retained" at CEN, a Level III facility. *Id.* This facility has a "more restrictive program than a Level II facility despite Plaintiff meeting all the program criteria for RJD Level II program facility." *Id.* at 10–11. Plaintiff's wife wrote a letter to the "classification service" requesting that Plaintiff be transferred either to "Lancaster State Prison," "Chino State Prison," or RJD, as "all three institutions are closer to Los Angeles" than CEN. *Id.* at 11.

On November 13, 2018, Plaintiff appeared before the classification committee and "reiterate[d] his desire to be transfer[red] to an institution closer to Los Angeles and submitted a personal letter to committee members." *Id.* Plaintiff's wife also "submitted a second written request." *Id.* On November 20, 2018, Defendant Monarrez "denied transfer and retained Plaintiff" at CEN. *Id.*

Plaintiff alleges that on December 20, 2018, Defendant Guzman "personally acknowledged in memorandum of constitutional violations of retaliation and discrimination of Plaintiff but took no steps to intervene or abate the violations." *Id.* at 11–12. On February 6, 2018, Defendant Madden "issued a memorandum" in which he

"acknowledged notice of unconstitutional violations of retaliation and discrimination." *Id.* at 12. Defendant Madden "denied Plaintiff's written request to be rescheduled for unit classification committee . . . or institutional classification . . . within six months." *Id.*

On March 13, 2019, Defendant Madden issued a "second memorandum" in response to Plaintiff grievance in which he "denied Plaintiff's request to receive the same privileges afforded to all Level II inmates and some Level III inmates." *Id.*

In December of 2018, Plaintiff alleges that he spoke to Defendant Raybon who told Plaintiff that he was "the only inmate who is begging to transfer to Level II and you've not been endorsed yet." *Id.* Plaintiff alleges Raybon then submitted a "false statement" in her response to Plaintiff's grievance "stating Plaintiff made a statement he never said." *Id.*

Plaintiff alleges that he has been denied a transfer to a facility closer to Los Angeles, while several other inmates who "are similarly situated as Plaintiff" have been "endorsed/transferred to Level II institutions or other Level III closer to Los Angeles." *Id.* at 13. Plaintiff further contends that "Defendants denial and retention of Plaintiff at [CEN] was arbitrary and capricious and for no other reason than retaliation for legal actions against correctional staff and was done without any legitimate penological goal." *Id.* at 14.

Plaintiff seeks $500,000 in compensatory damages, $500,000 in punitive damages, attorney fees and costs, and "for such other and further relief as the court may deem proper." *Id.*

C.  **Analysis**

Plaintiff brings his claims under 42 U.S.C. § 1983. "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To prevail on a claim for the violation of constitutional rights under section 1983, a plaintiff must prove two elements: (1) that a person acting under the color of state law committed the conduct at

issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity conferred by the Constitution or the laws of the United States. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A section 1983 suit may be dismissed for failure to state a claim "if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

*1. Equal Protection Claims*

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439; *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). An equal protection claim may be established in two ways. The first method requires the plaintiff to show that the defendant intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123. Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of his membership in a suspect class such as race, religion, or alienage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Here, Plaintiff does not allege to be a member of any suspect class and he fails to allege Defendants denied him his request to transfer to a prisoner closer to Los Angeles based on his membership in a suspect class.

To the extent his claims do not involve a suspect classification, Plaintiff may establish an equal protection claim only if he alleges facts sufficient plausibly to show Defendants intentionally treated similarly situated inmates differently without a rational basis for doing so. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601–02 (2008). To state an equal protection claim under this "class of one" theory, Plaintiff must allege facts that plausibly show: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). He must further allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976).

7

In support of this claim, Plaintiff lists six other inmates who were "endorsed/transferred" to Level II or Level III prisons closer to Los Angeles during during the period Plaintiff requested a transfer. Compl. at 13. Plaintiff fails, however, to plead facts that show how or why he is similarly situated to these inmates. Further, there are no facts to show that the reasons for transfer for these other inmates lacks a rational or penological interest as there are no allegations as to why these other inmates were transferred. Moreover, Plaintiff does not allege that these inmates made similar requests as Plaintiff. Plaintiff therefore fails adequately to plead his equal protection claim. Thus, Plaintiff's Fourteenth Amendment equal protection claim must be **DISMISSED** for failing to state a claim upon which relief could be granted.

### 2. *Retaliation claims*

Plaintiff also claims that Defendants "denial of transfer to a Level II facility has been done in retaliation for Plaintiff's actions of filing grievances and [a] civil complaint against correctional counselors and [the] facility captain" at CEN. Compl. at 2. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

Second, Plaintiff must allege Defendants took adverse action against him. *Id.* at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Indeed, "the mere threat of harm can be an adverse action." *Brodheim*, 584 F.3d at 1270.

Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegations of a chronology of events from which

retaliation can be inferred is sufficient to survive dismissal. *Id.* (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")). A retaliation claim cannot, however, rest solely on the "logical fallacy of *post hoc, ergo propter hoc*, literally 'after this, therefore because of this.'" *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000); *Morman v. Dyer*, No. 16-CV-01523-SI, 2018 WL 2412183, at *7 (N.D. Cal. May 29, 2018).

Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

The Court finds Plaintiff has alleged facts sufficient to satisfy the first two elements of a retaliation claim. Plaintiff falls far short, however, of pleading any facts sufficient to support any of the other elements necessary to sustain a claim of retaliation. Plaintiff offers no factual allegations as to how Defendants Curry, Monarrez, Guzman, or Madden were aware that he had filed any grievances or complaints when they denied his request for a transfer.

As to Defendant Raybon, whom Plaintiff claims he has sued in a separate action, he does not allege what role, if any, she played in the denial of his transfer request. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding retaliation claims require a showing that Plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct"). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Finally, Plaintiff fails to allege that the denial of his request to transfer to another prison "failed to advance a legitimate goal of the correctional institution." *See Rizzo*, 778

F.2d at 532. Generally, it is the role of "prison administrators . . ., and not the courts, to make the difficult judgments concerning institutional operations." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 128 (1977).

According, the Court **DISMISSES** Plaintiff's First Amendment retaliation claims for failing to state a claim upon which relief may be granted.

   *3. Defendant Classification Service Department*

The Court notes that Plaintiff includes the "Classification Service Department," an agency of the CDCR, as a Defendant. The CDCR, and departments within the CDCR, are not "persons" subject to suit under § 1983. *See Hale v. State of Arizona,* 993 F.2d 1387, 1398–99 (9th Cir. 1993) (holding that a state department of corrections is an arm of the state and, thus, not a "person" within the meaning of § 1983). Therefore, the claims against "Classification Service Department" are **DISMISSED WITH PREJUDICE** and without leave to amend.

  *D. Leave to Amend*

For all these reasons, the Court finds Plaintiff's Complaint fails to state a claim upon which § 1983 relief can be granted and thus **DISMISSES** the Complaint sua sponte in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Having now provided Plaintiff with "notice of the deficiencies in his complaint," the Court will also grant Plaintiff an opportunity to fix them, if he can. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). The Court therefore **GRANTS** Plaintiff leave to amend.

**III. Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $34.85 initial partial filing fee assessed, *if those funds*

10

*exist at the time this Order is executed*, and to thereafter garnish the remainder of the $350 filing fee owed in this case by collecting monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding them to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not replied.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

///

///

5. The Clerk of Court is directed to mail Plaintiff a court approved form civil rights complaint for his use in amending.

**IT IS SO ORDERED**.

Dated: October 17, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge