UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RONNELL PERKINS, CDCR #E-30776,<br><br>Plaintiff,<br><br>vs.<br><br>CLASSIFICATION SERVICE DEP'T; D. CURRY; A. MONARREZ; F.N. GUZMAN; RAYMOND MADDEN; T. RAYBON; DOES 1-10,<br><br>Defendants. | Case No.: 3:19-cv-01382-JLS-MDD<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO**<br>**28 U.S.C. § 1915(e)(2) AND**<br>**28 U.S.C. § § 1915A(b)** |

**I.      Procedural History**

On July 24, 2019, Plaintiff Gary Ronnell Perkins, proceeding pro se, and currently incarcerated at Chuckawalla Valley State Prison ("CVSP") located in Blythe, California, has filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. In addition, Plaintiff filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a certified Prison Certificate and a copy of his CDCR Inmate Trust Account Statement Reports (ECF Nos. 2, 3).

1

On October 17, 2019, the Court granted Plaintiff's Motion to Proceed IFP but simultaneously dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). (ECF No. 5.) Plaintiff was granted leave to file an amended pleading in order to correct the deficiencies of pleading identified in the Court's Order. (*Id.*) On November 25, 2019, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 6.)

**II.    Sua Sponte Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

*A.    Legal Standard*

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the Prison Litigation Reform Act ("PLRA") obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing," and ideally before the service of process upon any defendant. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915[] is to 'ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a

complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. *Plaintiff's Factual Allegations*

On November 27, 2107, Plaintiff "appeared before classification committee" where Plaintiff "requested that he be transferred from a Level III facility to a Level II facility pursuant to California Code of Regulations subsection 3375.1(a)(2)." (FAC at 1–2.) Specifically, Plaintiff requested a transfer to either the California Institution for Men ("CIM") or the Richard J. Donovan Correctional Facility ("RJD"). (*See id.* at 2.)

In February of 2017, the CDCR "authorized prisoners serving a sentence of 'life without the possibility of parole' (LWOP) to be housed at any Level II facility which has a 'lethal electrified fence.'" (*Id.* at 7.) Plaintiff, an inmate serving an LWOP sentence, alleges that he "met the criteria" permitting him to be housed at a Level II institution. (*Id.* at 8.)

The Unit Classification Committee ("UCC") "submitted a recommendation to classification service for endorsement of Plaintiff to be transferred" to a Level II "programming facility at RJD." (*Id.*) On December 12, 2017, Defendant Curry, the "classification service representative who was assigned to review Plaintiff's request," denied his transfer and "retained Plaintiff at Centinela State Prison Level III." (*Id.*) Plaintiff claims the reason provided was "LWOP status of Plaintiff." (*Id.*)

On November 13, 2018, Plaintiff "appeared for annual review" before the UCC and again requested transfer to either Level II facility, RJD or CIM. (*Id.*) Defendant Monarrez, the "classification service representative who was assigned to review Plaintiff's request for transfer" again denied his request "due to LWOP status." (*Id.* at 9.)

Plaintiff submitted administrative grievances arguing that the denial of his requests for transfer were "discriminatory." (*Id.*) On January 16, 2018, Defendant Madden "authored a memorandum in response to Plaintiff's grievance denying Plaintiff 602 grievance at the second level of review." (*Id.*) On December 4, 2018, Defendant Guzman responded to Plaintiff's grievance in which she "acknowledged notice of discrimination and violation of Plaintiff's Fourteenth Amendment" rights. (*Id.*) Defendant Guzman, however, "denied Plaintiff's request to resubmit Plaintiff's case for placement on Level II." (*Id.*)

On February 6, 2019, Defendant Madden also responded to Plaintiff's grievance and "denied Plaintiff's request to be rescheduled for transfer to Level II despite notice of discrimination." (*Id.* at 10.) Plaintiff claims Defendants "denial of transfer of Plaintiff to a Level II facility and retention at Centinela State Prison Level III was/is discriminatory, was arbitrary, capricious and without legitimate penological goal." (*Id.* at 10–11.)

Plaintiff seeks compensatory damages in the amount of $500,000 and punitive damages in the amount of $500,000. (*See id.* at 13.)

### C. U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*,

263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To prevail on a claim for the violation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity conferred by the Constitution or the laws of the United States. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A section 1983 suit may be dismissed for failure to state a claim "if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

### D. Equal Protection Claims

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439; *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005). Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of his membership in a suspect class such as race, religion, or alienage. *Thornton*, 425 F.3d at 1167.

Here, Plaintiff does not allege to be a member of any suspect class, and he fails to allege Defendants denied him his request to transfer to a prisoner closer to Los Angeles based on his membership in any suspect class.

To the extent his claims do not involve a suspect classification, Plaintiff may establish an equal protection claim only if he alleges facts sufficient to plausibly show Defendants intentionally treated similarly situated inmates differently without a rational

5

3:19-cv-01382-JLS-MDD

263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To prevail on a claim for the violation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity conferred by the Constitution or the laws of the United States. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A section 1983 suit may be dismissed for failure to state a claim "if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

### D. Equal Protection Claims

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439; *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005). Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of his membership in a suspect class such as race, religion, or alienage. *Thornton*, 425 F.3d at 1167.

Here, Plaintiff does not allege to be a member of any suspect class, and he fails to allege Defendants denied him his request to transfer to a prisoner closer to Los Angeles based on his membership in any suspect class.

To the extent his claims do not involve a suspect classification, Plaintiff may establish an equal protection claim only if he alleges facts sufficient to plausibly show Defendants intentionally treated similarly situated inmates differently without a rational

263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To prevail on a claim for the violation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity conferred by the Constitution or the laws of the United States. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A section 1983 suit may be dismissed for failure to state a claim "if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

### D. Equal Protection Claims

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439; *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005). Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of his membership in a suspect class such as race, religion, or alienage. *Thornton*, 425 F.3d at 1167.

Here, Plaintiff does not allege to be a member of any suspect class, and he fails to allege Defendants denied him his request to transfer to a prisoner closer to Los Angeles based on his membership in any suspect class.

To the extent his claims do not involve a suspect classification, Plaintiff may establish an equal protection claim only if he alleges facts sufficient to plausibly show Defendants intentionally treated similarly situated inmates differently without a rational

basis for doing so. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008). But to state an equal protection claim under this "class of one" theory, he must allege facts to plausibly show that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook*, 528 U.S. at 564). He must further allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

In support of this claim, Plaintiff lists four other inmates who were "endorsed" or transferred" to a Level II or Level III prisons "closer to Los Angeles during CSR denial of Plaintiff." FAC at 11. These facts are insufficient to plead an equal protection claim. Plaintiff fails to show how or why he is similarly situated to these inmates other than they are also inmates sentenced to life without the possibility of parole. There are no facts to show that the reasons for transfer for these other inmates lack a rational or penological interest. Moreover, Plaintiff does not allege that these inmates made similar requests as Plaintiff which were granted while Plaintiff's requests were denied. There are no allegations as to why these other inmates were transferred. Moreover, this is four inmates out of potential hundreds of inmates within the CDCR who are serving an LWOP sentence. In fact, Plaintiff is now housed at a prison that only has Level II and Level I inmates.[1] Therefore, it seems at some point, which Plaintiff fails to address, Defendants decided to transfer him to a Level II institution.

Thus, Plaintiff's Fourteenth Amendment equal protection claims must be **DISMISSED** for failing to state a claim upon which relief could be granted.

///

---

[1] *See* https://www.cdcr.ca.gov/facility-locator/cvsp/ (website last visited Jan. 3, 2019).

### E. Leave to Amend

Plaintiff has already been provided a short and plain statement of his pleading deficiencies but failed to correct any of these deficiencies in his FAC. Therefore, the Court finds further attempts to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

## III. Conclusion and Order

For the reasons explained, the Court:

1) **DISMISSES** this civil action without further leave to amend for failure to state a claim upon which *Bivens* relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

2) **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and

3) **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to close the file.

**IT IS SO ORDERED**.

Dated: January 28, 2020

Hon. Janis L. Sammartino
United States District Judge